■ In the Matter of J. W. MAYS, INC., Petitioner, v NEW YORK STATE HUMAN RIGHTS APPEAL BOARD et al., Respondents. — Proceeding pursuant to section 298 of the Executive Law to review an order of the State Human Rights Appeal Board, dated February 20, 1981, affirming an order of the State Division of Human Rights, dated April 14, 1980, which, after a hearing, sustained the complaint against the petitioner and imposed a penalty. The State division has cross-moved for enforcement of the order. Order confirmed and proceeding dismissed, without costs or disbursements. Cross application granted. Upon the prima facie showing that complainant may have been transferred out of the phonograph record department because she is a woman, inasmuch as she was the first woman salesperson to be assigned to the record department in five years and she had not, according to her testimony, been advised prior to the transfer that her work performance was unsatisfactory, petitioner J. W. Mays, Inc., then had the burden of showing that the transfer was made for "'some independent legitimate reason which was neither a pretext for discrimination nor was substantially influenced by impermissible discrimination'" *(Matter of Maloff v City Comm. on Human Rights [Anilyan],* 46 NY2d 908, 910). That petitioner did not meet its burden and that the transfer was based on complainant's sex, is supported by substantial evidence. The testimony of the man in over-all charge of the record departments in petitioner's eight stores was, for example, that complainant was a good worker, but she could not perform in the "fast-moving" record department, a department where the other five salespersons were male, and had been all male for some five years. Petitioner argues essentially that it proved its case that complainant was transferred for incompetence, but that the Administrative Law Judge

818

erred in his evaluation of the testimony. The record does not support petitioner's argument. We have examined petitioner's remaining contentions and find them also to be without merit. Hopkins, J. P., Titone and Rabin, JJ., concur.

Weinstein, J., dissents and votes to grant the petition, annul the order and dismiss the complaint charging unlawful discrimination, with the following memorandum: The respondent Human Rights Appeal Board has sustained a determination by the respondent Division of Human Rights that petitioner, J. W. Mays, Inc., unlawfully discriminated against Wilma Moore on the basis of sex. In my judgment, that determination was not supported by the evidence adduced at the hearing before the Division of Human Rights, and hence, should have been annulled. Moore was originally assigned to work as a salesperson in the phonograph record department. Some four months later, she was transferred, with no reduction in pay or benefits, to the toddler department and shortly afterward, at her own request, to the giftware department. Moore asserted that her transfer out of the record department was due to a policy of petitioner to employ only males in the record departments of its various stores; indeed, for the seven stores owned by petitioner for which data were available, the overwhelming majority of salespersons assigned to the record departments were male. In addition, Moore testified that Guy Davis, her immediate superior, informed her at the time of her transfer that the reason for the transfer was that she was female; however, three other employees who allegedly heard this statement were not called to testify. To counter this charge of gender-based discrimination, petitioner introduced overwhelming and well-corroborated evidence that Moore's transfer was occasioned not by her sex, but by her unsatisfactory performance in the record department. According to this evidence, Moore would not do certain chores requested of her, would be seen leaning against the cash register with her arms folded instead of helping customers in her department, and would spend time "[s]ocializing with the cashier" while on duty. The buyer in charge of the record departments at all petitioner's stores corroborated these facts, adding that when he asked her questions over the telephone about merchandise, she neither knew nor seemed to care about the answer. Any suspicion that Moore's difficulties in the record department stemmed from a personality clash was countered by evidence that her superior in the giftware department also registered complaints about her. Essentially, then, petitioner's decision to transfer Moore rather than fire her was an act more of grace than of discrimination. Although it is true that petitioner employs a disproportionate number of males in its several record departments, the testimony revealed that its store in Fishkill had a female manager of its record department, and that her assistant was female. Two women were assigned to the record department in the store in which Moore worked, shortly after her transfer. Moore's claim that her transfer was gender motivated is belied by the fact that she was allowed to work in the record department for four months before being transferred; on the other hand, complaints about her job performance there started being made after less than one month. The law is that once a prima facie showing of employment discrimination has been made, the burden shifts to the employer to show that it acted on the basis of some legitimate reason, neither influenced by nor serving as a pretext for unlawful discrimination (see *Matter of Maloff v City Comm. on Human Rights [Anilyan]*, 46 NY2d 908). Here, Moore did make the necessary prima facie showing, although her failure to either call as witnesses, or explain the absence of, the three employees who allegedly heard Davis tell her that her transfer was sex motivated is noteworthy, to say the least. But, in any event, the evidence presented by the petitioner was more than sufficient to counter Moore's allegation of discrimination and to establish that her transfer was motivated by the legitimate reason of inadequate and unsatisfactory job

performance. Accordingly, the order of the Human Rights Appeal Board should be annulled. Furthermore, I would annul that order for another reason. A hearing on a charge of discrimination must be held within 270 days of the filing of a complaint (Executive Law, § 297, subd 4, par a); the hearing here, however, was not held until more than two years after the filing. A determination must be made within 180 days after the commencement of the hearing (Executive Law, § 297, subd 4, par c); the lapse here was almost 260 days. Although it has been held that these time limits are not mandatory absent a showing of prejudice (see *Matter of Sarkisian Bros. v State Div. of Human Rights,* 48 NY2d 816), "[s]uch is the law where relatively minor delays occur. However * * * protracted administrative delays * * * will constitute, as a matter of law, prejudice * * * warranting the exercise of the equitable powers of the judiciary to divest the division of jurisdiction" *(State Div. of Human Rights v Board of Educ.,* 53 AD2d 1043, 1044, affd 42 NY2d 862). Besides, there was actual prejudice to petitioner here. Due to the unreasonably long delay, it was unable to call as a witness Guy Davis, who had left petitioner's employ and did not respond to a subpoena. His testimony would have been crucial to the truth-seeking process; his alleged comment to Moore was the only direct evidence that Moore's transfer was actually gender motivated, and yet Moore's failure to have it corroborated cast real doubt on its veracity. Petitioner was substantially prejudiced by not being able to offer Davis' testimony. For each of the reasons stated above, one of the facts and the other on the law, I would annul the order of the Human Rights Appeal Board.