STATE DIVISION OF HUMAN RIGHTS on Complaint of FRANCES E. COX, Petitioner, v NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES, Respondent.

Fourth Department, January 20, 1978

**APPEARANCES OF COUNSEL**

*Emmelyn Logan Baldwin* for petitioner.

*Ann Thatcher Anderson* for State Division of Human Rights.

*Victor Zuckerman* for respondent.

**OPINION OF THE COURT**

HANCOCK, JR. J.

In this proceeding pursuant to section 298 of the Executive Law we hold, following our decision in *New York State Div. of Human Rights v New York-Pennsylvania Professional Baseball League* (36 AD2d 364, affd 29 NY2d 921), that sexual

identity is not a "bona fide occupational qualification" for the position of cook in a minimum security correctional facility for males. (See *Rosenfeld v Southern Pacific Co.,* 444 F2d 1219; *Diaz v Pan Am. World Airways,* 442 F2d 385, 386, cert den 404 US 950; *Weeks v Southern Bell Tel. & Tel. Co.,* 408 F2d 228; *State Div. of Human Rights v New York City Dept. of Parks & Recreation,* 38 AD2d 25.)

Petitioner, a woman who was concededly refused employment at the Albion Correctional Facility because of her sex, appeals from an order of the Human Rights Appeal Board dismissing her complaint after reversing and vacating a decision and order of the Commissioner of the State Division of Human Rights. The State Division of Human Rights held after a public hearing that petitioner was qualified for the position of cook and that respondents had discriminated against her by denying her the position because of her sex. The commissioner ordered that respondents hire petitioner as a cook with rights and benefits that she would have received, including back pay, retroactive to the date the position was filled, and awarded $250 damages for mental suffering. He also directed that respondents re-examine their personnel policy and send a memorandum to all supervisory employees, agents, officers and unions advising them of the policy of nondiscrimination on the basis of sex.

In reversing the commissioner's determination, the Appeal Board found that petitioner was properly denied the position of cook on the ground that a female was not qualified for such a position because "it is dangerous for a female to work alone in a prison during the early morning hours and [respondents] are not willing to risk the consequences, even if [petitioner] is willing to do so." The board further stated that "there is a point where freedom to choose employment is limited * * * An attractive female working alone in a prison facility is not the type of responsibility that a prison superintendent should be required, under our law, to have."

The board's conclusion reflects the opinions of the Assistant Deputy Commissioner of the New York Department of Correctional Facilities, who testified at the hearing that he would not place a woman in the position of cook "for her own good" because of the danger of sexual attack, and those of the captain in charge of security at Albion Correctional Facility, who testified that women would be in greater danger of sexual attack than men in such a job because "they are women."

■ It is clear from the foregoing that the only aspect of the job of cook in the minimum security facility offered as a reason for the "bona fide occupational qualification" is its danger to women. That a job is too dangerous for women, without more, is an insufficient basis for the "bona fide occupational qualification" exception, for it is the rationale of the New York Human Rights Law (Executive Law, §§ 290-301) and the United States Civil Rights Act of 1964 (tit VII, § 703; US Code, tit 42, § 2000e-2) that the individual woman should be allowed to choose for herself whether to accept the risk. *(Dothard v Rawlinson,* 433 US 321.) As stated in *Weeks v Southern Bell Tel. & Tel. Co.* (408 F2d 228, 236, *supra):* "Moreover, Title VII rejects * * * this type of romantic paternalism [i.e., protecting women by excluding them from dangerous jobs] as unduly Victorian and instead vests individual women with the power to decide whether or not to take on unromantic tasks. Men have always had the right to determine whether the incremental increase in remuneration for strenuous, dangerous, obnoxious, boring or unromantic tasks is worth the candle. The promise of Title VII is that women are now to be on equal footing. We cannot conclude that by including the bona fide occupational qualification exception Congress intended to renege on the promise."

■ Respondents do not contend that petitioner's sexual identity as a female would in any way impair her ability to perform all of the functions of a cook. Rather, the claimed "bona fide occupational qualification" here is based solely on assumed general characteristics of women as being more subject to sexual attack than men. Such a basis violates the accepted rule that: "Equality of footing is established only if employees otherwise entitled to the position, whether male or female, are excluded only upon a showing of individual incapacity. *See* Bowe v. Colgate-Palmolive Co., 416 F2d 711, 718 * * * This alone accords with the Congressional purpose to eliminate subjective assumptions and traditional stereotyped conceptions regarding the physical ability of women to do particular work." *(Rosenfeld v Southern Pacific Co.,* 444 F2d 1219, 1225, *supra.)*

The recent decision of the United States Supreme Court in *Dothard v Rawlinson (supra)* held that women could properly be excluded from the job of correctional counselor in a maximum security prison in Alabama on the basis of "bona fide occupational qualification." However, *Dothard* supports our

holding here because the court emphasized that it was the effect of a woman's sexual identity on her capacity to perform the assigned tasks of a correction counselor of maintaining security in the "jungle atmosphere" of the maximum security prison and not the dangerous aspect of the job which was determinative. The court stated: "In the usual case, the argument that a particular job is too dangerous for women may appropriately be met by the rejoinder that it is the purpose of Title VII to allow the individual woman to make that choice for herself. More is at stake in this case, however, than an individual woman's decision to weigh and accept the risks of employment in a 'contact' position in a maximum-security male prison. The essence of a correctional counselor's job is to maintain prison security. A woman's relative ability to maintain order in a male, maximum-security, unclassified penitentiary of the type Alabama now runs *could be directly reduced by her womanhood. * * * The employee's very womanhood would thus directly undermine her capacity to provide the security that is the essence of a correctional counselor's responsibility.* (Emphasis added; *Dothard v Rawlinson,* 433 US 321, 335, 336.)

In our opinion, therefore, the reason assigned by respondents for the "bona fide occupational qualification" demonstrates the very sort of "romantic paternalism" condemned by the cases. The order of the Appeal Board, therefore, must be annulled.

■ Respondents allege that the Division of Human Rights failed to proceed within the time limits imposed by section 297 of the Executive Law and that as a result it should be divested of jurisdiction over the matter. The statutory time limitations prescribed are directory rather than mandatory *(Union Free School Dist. No. 6 of Towns of Islip & Smithtown v New York State Human Rights Appeal Bd.,* 35 NY2d 371; *State Div. of Human Rights v Board of Educ. of West Val. Cent. School Dist.,* 53 AD2d 1043, affd 42 NY2d 862); yet protracted administrative delays in the implementation of the provisions of the Human Rights Law have been held to warrant divestiture of the division's jurisdiction *(State Div. of Human Rights v Board of Educ. of West Val. Cent. School Dist., supra).* Here the delays were substantially less than those in *West Valley* but beyond the statutory time limitations established by section 297 of the Executive Law as that section read at the time of the proceedings. The delays, however, were with one exception

well within the more liberal time periods of section 297 after the section was amended on August 5, 1977 (L 1977, ch 729). It can be argued that because the amendment affects a procedural and not a substantive matter it should be applied retroactively (McKinney's Cons Laws of NY, Book 1, Statutes, § 55; *Muraco v Ferentino,* 42 Misc 2d 104). In any event, it would seem that the amendment should be accorded some weight as an indication of what the Legislature views as protracted delay. Considering all of the circumstances, we do not find that the division was divested of jurisdiction over the matter due to delays in processing the petitioner's complaint.

Respondents also contend that the commissioner's award of back pay and $250 damages for mental suffering may not stand because, *inter alia,* it appears from documents and other evidence in the record before the Appeal Board that petitioner was not qualified for the position of cook. The position for which petitioner applied, i.e., cook, was classified by the New York State Department of Civil Service as a grade 9 position requiring "three years of experience in large-scale cooking." Petitioner's previous position with the Narcotics Addiction Control Commission at Iroquois was that of food service worker, a grade 4 position the officially listed duties of which do not entail cooking. Petitioner contends, however, that she actually performed the duties of a cook at the Iroquois facility. There is insufficient proof in the record to enable us to determine whether petitioner was qualified for the position of cook, and the question of her specific qualifications for the job was not explored in depth by the division on the hearing or by the Appeal Board in its determination. Further, it appears that petitioner's qualifications for the job are the subject of another hearing pending before the division. Thus, the case should be remitted to the division for further proof on the issue of petitioner's qualifications and for a determination of what relief, if any, would be appropriate or, if warranted, for consolidation with the pending proceeding.

In view of the foregoing, we do not reach the questions concerning the adequacy of the proof of damages for lost wages and mental suffering and the asserted invalidity in view of section 9 of article VI of the New York State Constitution of an award of damages against the State.

Petitioner's timely filing of the petition and notice of petition were sufficient to initiate this proceeding under section 298 of the Executive Law, and there is no merit to respon-

dents' claim that petitioner's delay in filing the written transcript of the record divests us of jurisdiction.

The determination and order of the Appeal Board should be annulled and the matter remitted to the State Division of Human Rights for further proceedings in accordance herewith.

MARSH, P. J., CARDAMONE, SIMONS and DENMAN, JJ., concur.

Petition unanimously granted, without costs, to the extent that order of State Human Rights Appeal Board be annulled and matter remitted to State Division of Human Rights for further proceedings in accordance with opinion by HANCOCK, JR., J.